## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES FIRE INSURANCE COMPANY and NORTH RIVER INSURANCE COMPANY, | ) ) ) ) ) ) | No. _____ |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) ) | |
| EQUITAS INSURANCE LIMITED; TENECOM LIMITED f/k/a Yasuda Fire & Marine Insurance Company (UK) Limited and as the successor under United Kingdom law to Winterthur Swiss Insurance Company f/k/a Accident and Casualty Insurance Company No. 3 Account; SOMPO HOLDINGS, INC. f/k/a Sompo Japan Insurance, Inc. f/k/a Nissan Fire & Marine Insurance Company; and BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY f/k/a Stonewall Insurance Company, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

## <u>COMPLAINT</u>

Plaintiffs United States Fire Insurance Company ("U.S. Fire") and North River Insurance Company ("North River") bring this action against Defendants Equitas Insurance Limited ("Equitas"), Tenecom Limited f/k/a Yasuda Fire & Marine Insurance Company (UK) Limited and as the successor under United Kingdom law to Winterthur Swiss Insurance Company f/k/a Accident and Casualty Insurance Company No. 3 Account, Sompo Holdings, Inc. f/k/a Sompo Japan Insurance, Inc. f/k/a Nissan Fire & Marine Insurance Company, and Berkshire Hathaway Specialty Insurance Company f/k/a Stonewall Insurance Company (collectively, the "London

Market Companies" and, together with Equitas, the "Resolute-Managed Reinsurers") for breach of contract and declaratory judgment.  In support thereof, U.S. Fire and North River state as follows:

## NATURE OF THE ACTION

1.     U.S. Fire and North River have billed Equitas and the London Market Companies more than $43 million under facultative reinsurance contracts reinsuring twelve underlying insurance policies.

2.     Equitas refuses to pay more than $20 million of those billings.

3.     In addition, Equitas and the London Market Companies purport to have made their payments and/or partial payments under a "reservation of rights."

4.     In this action, U.S. Fire and North River bring:  (1) breach of contract counts against Equitas to recover the more than $20 million in outstanding billings; and (2) a declaratory judgment count seeking a declaration that the Resolute-Managed Reinsurers are obligated to pay to U.S. Fire and North River, without reservation, their respective shares of those billings.

## THE PARTIES

5.     Plaintiff U.S. Fire is a corporation incorporated in the State of Delaware, with its principal place of business located in Morristown, New Jersey.

6.     Plaintiff North River is a corporation incorporated in the State of New Jersey, with its principal place of business located in Morristown, New Jersey.

7.     Non-Party RiverStone Claims Management LLC ("RiverStone") manages claims under the reinsurance contracts at issue in this action on behalf of U.S. Fire and North River from its office in Manchester, New Hampshire.

8. Defendant Equitas, a corporation organized under the laws of England and Wales, is a company registered with Companies House, an executive agency of the United Kingdom, with its registered office in London, England.  Equitas, pursuant to a transaction approved by the English High Court of Justice on or about June 30, 2009 and subject to court sanction in England, assumed its predecessors-in-interest's—Certain Underwriters at Lloyd's of London—non-life insurance and reinsurance obligations for years 1992 and prior, including the obligations under reinsurance contracts that are subject to this action.

9. Defendant Tenecom Limited f/k/a Yasuda Fire & Marine Insurance Company (UK) Limited and as the successor under United Kingdom law to Winterthur Swiss Insurance Company f/k/a Accident and Casualty Insurance Company No. 3 Account ("Tenecom") is an insurance company organized under the laws of the United Kingdom with its principal place of business in London, United Kingdom.

10. Defendant Sompo Holdings, Inc. f/k/a Sompo Japan Insurance, Inc. f/k/a Nissan Fire & Marine Insurance Company ("Sompo") provides property and casualty insurance, life insurance, and financial and other services in Japan and internationally.  Sompo is domiciled in Japan, with its principal place of business in Tokyo, Japan.

11. Defendant Berkshire Hathaway Specialty Insurance Company f/k/a Stonewall Insurance Company ("Berkshire") is a Nebraska corporation, with its principal place of business in Nebraska.

12. Non-Party Resolute Management Services Limited ("RMSL") manages claims under the reinsurance contracts at issue in this action on behalf of the Resolute-Managed Reinsurers.

13.     In the course of handling those claims, RMSL has held itself out to U.S. Fire and North River, and acted, as the Resolute-Managed Reinsurers' agent.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because (1) Plaintiffs U.S. Fire and North River are citizens of a U.S. state and Defendants Equitas, Tenecom, and Sompo are citizens of a foreign state; (2) Plaintiffs U.S. Fire and North River and Defendant Berkshire are citizens of different U.S. states; and (3) the amount in controversy exceeds $75,000, exclusive of interest, costs and fees.

15.     This Court has personal jurisdiction over the Resolute-Managed Reinsurers because they entered into contracts with a service of suit clause, thereby consenting to the jurisdiction of this Court.

16.     Venue is proper in this district pursuant to the aforementioned service of suit clause in the parties' contracts.  Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to U.S. Fire's and North River's claims occurred in this district, or, in the alternative, pursuant to § 1391(c) because the Resolute-Managed Reinsurers are subject to personal jurisdiction in this district.

## FACTS

17.     A reinsurance contract is an arrangement whereby one insurance company, known as the "cedent" (in this case, U.S. Fire or North River), obtains insurance from another insurer, known as the "reinsurer" (here, the Resolute-Managed Reinsurers) in order to transfer some or all of the insured risk that the cedent has assumed.

18.     The reinsurance at issue in this case is "facultative reinsurance," which applies to a single policy or risk and is negotiated on an individual basis.

A.     **The Underlying Insurance Policies Issued by U.S. Fire and North River to Mine Safety**

19.     Mine Safety Appliances Company ("Mine Safety") manufactures and sells products designed to protect the safety and health of individuals, including:  (i) respiratory protection equipment (air purifying respirators) intended to protect the user from inhaling various ambient particles, such as coal mine dust; and (ii) asbestos-containing personal protective products including head, eye, hand, and face protection, such as protective clothing for use in high heat.

20.     U.S. Fire and North River issued the following twelve umbrella and excess umbrella liability policies to Mine Safety from August 1972 to April 1985 with combined limits of approximately $244 million (the "Mine Safety Policies"):

| **Mine Safety Policy Number** | **Effective Dates** | **Issuing Carrier** |
|---|---|---|
| JU 10 | 03/30/1973 – 04/01/1976 | U.S. Fire |
| JU 139 | 01/01/1976 – 04/01/1979 | North River |
| JU 157 | 04/01/1976 – 04/01/1979 | North River |
| JU 158 | 04/01/1976 – 04/01/1979 | U.S Fire |
| JU 171 | 04/01/1976 – 04/01/1979 | U.S Fire |
| JU 653 | 04/01/1979 – 04/01/1980 | North River |
| JU 830 | 04/01/1980 – 04/01/1981 | North River |
| JU 988 | 04/01/1981 – 04/01/1982 | North River |
| JU 1123 | 04/01/1982 – 04/01/1983 | North River |
| JU1225 | 04/01/1983 – 04/01/1984 | North River |
| JU 1319 | 04/01/1984 – 04/01/1985 | North River |
| XS 2526 | 08/28/1972 – 04/01/1976 | U.S. Fire |

5

**B.**     **The Claims, Underlying Coverage Litigation, and Settlement**

21.     Since U.S. Fire and North River issued the Mine Safety Policies, thousands of individuals have alleged that they became ill due to the inhalation of coal dust, asbestos, and silica through allegedly defective Mine Safety respirators or due to exposure to asbestos contained in Mine Safety personal protective products.

22.     U.S. Fire and North River became involved in several lawsuits in different jurisdictions with Mine Safety involving claims for insurance coverage under the Mine Safety Policies.  Over the years, those courts ruled on many of the coverage issues raised in those actions.  Many of those rulings were ultimately appealed.

23.     In October 2016, a Pennsylvania state court jury found that North River had breached three of the Mine Safety Policies and violated Pennsylvania's bad faith statute.  In February 2017, the court issued a verdict of bad faith against North River.  North River appealed both the jury and non-jury verdicts.

24.     In March 2017, U.S. Fire and North River paid Mine Safety $81,268,716 for specific claims tendered by Mine Safety under the Mine Safety Policies.

25.     Late in 2017, a court-ordered mediation began between U.S. Fire and North River, on the one hand, and Mine Safety, on the other hand.

26.     While the parties' respective appeals of the coverage rulings and U.S. Fire's and North River's appeal of the jury and non-jury verdicts were pending, U.S. Fire, North River, and Mine Safety reached a confidential settlement.

**C.**     **The Reinsurance Contracts**

27.     Between 1972 and 1985, U.S. Fire and North River entered into reinsurance contracts with one or more of the Resolute-Managed Reinsurers covering the twelve Mine Safety Policies (collectively, the "Reinsurance Contracts").

28.     U.S. Fire entered into Reinsurance Contract UH3264700—reinsuring Policy JU 10—with, among others, the following Resolute-Managed Reinsurers:  Equitas (via Underwriters at Lloyd's London); Berkshire (via Stonewall Insurance Company); and Tenecom (via Accident and Casualty Insurance Company No. 3 Account).

29.     North River entered into Reinsurance Contract UL1929000—reinsuring Policy JU 139—with, among others, the following Resolute-Managed Reinsurers:  Equitas (via Underwriters at Lloyd's London); Tenecom (via Yasuda Fire & Marine Insurance Company (UK) Limited); Sompo (via Nissan Fire & Marine Insurance Company); and Tenecom (via Winterthur Swiss Insurance Company).

30.     North River entered into Reinsurance Contract UL1982900—reinsuring Policy JU 157—with, among others, the following Resolute-Managed Reinsurers:  Equitas (via Underwriters at Lloyd's London); Tenecom (via Yasuda Fire & Marine Insurance Company (UK) Limited); Sompo (via Nissan Fire & Marine Insurance Company); and Tenecom (via Winterthur Swiss Insurance Company).

31.     U.S. Fire entered into Reinsurance Contract UL1983000—reinsuring Policy JU 158—with, among others, the following Resolute-Managed Reinsurers:  Equitas (via Underwriters at Lloyd's London); Tenecom (via Yasuda Fire & Marine Insurance Company (UK) Limited); Sompo (via Nissan Fire & Marine Insurance Company); and Tenecom (via Winterthur Swiss Insurance Company).

32.     U.S. Fire entered into Reinsurance Contract UL2016300—reinsuring Policy JU 171—with, among others, the following Resolute-Managed Reinsurers:  Equitas (via Underwriters at Lloyd's London).

33.     North River entered into Reinsurance Contract UP2618700—reinsuring Policy JU 653—with, among others, the following Resolute-Managed Reinsurers:  Tenecom (via Winterthur Swiss Insurance Company).

34.     North River entered into Reinsurance Contract UQ2767800— reinsuring Policy JU 830—with, among others, the following Resolute-Managed Reinsurers:  Equitas (via Underwriters at Lloyd's London); and Tenecom (via Winterthur Swiss Insurance Company).

35.     North River entered into Reinsurance Contract UR2767800—reinsuring Policy JU 988—with, among others, the following Resolute-Managed Reinsurers:  Equitas (via Underwriters at Lloyd's London); and Tenecom (via Winterthur Swiss Insurance Company)

36.     North River entered into Reinsurance Contract US2767800—reinsuring Policy JU 1123—with, among others, the following Resolute-Managed Reinsurers:  Equitas (via Underwriters at Lloyd's London); and Tenecom (via Winterthur Swiss Insurance Company)

37.     North River entered into Reinsurance Contract UT2767800—reinsuring Policy JU 1225—with, among others, the following Resolute-Managed Reinsurers:  Equitas (via Underwriters at Lloyd's London); Tenecom (via Winterthur Swiss Insurance Company); and Tenecom (via Yasuda Fire & Marine Insurance Company (UK) Limited).

38.     North River entered into Reinsurance Contract UU2767800—reinsuring Policy JU 1319—with, among others, the following Resolute-Managed Reinsurers:  Tenecom (via Yasuda Fire & Marine Insurance Company (UK) Limited).

39.     U.S. Fire entered into Reinsurance Contract UG3191100—reinsuring Policy XS 2526—with, among others, the following Resolute-Managed Reinsurers:  Equitas (via Underwriters at Lloyd's London); and Tenecom (via Accident and Casualty Insurance Company No. 3 Account).

### D.    Equitas's Obligations for the Reinsurance Contracts

40.    Lloyd's of London refers to a marketplace in which its members, or underwriters, assume insurance and reinsurance risks.  The underwriters are sometimes referred to as "Names."  Names subscribe to certain percentages of various risks through unincorporated administrative entities called syndicates, through which they assume premiums and risk.

41.    In the later 1980s and early 1990s, members of syndicates operating in the Lloyd's marketplace suffered substantial losses as a result, in part, of asbestos and pollution liabilities arising under policies and reinsurance contracts covering risks in the United States. Names were called upon to fund such liabilities, with the prospect of additional cash calls as losses on older policies continued to grow.  There was a risk that the available assets would not be sufficient to pay all claims, and this risk threatened the disruption of the market and its ability to continue in business.

42.    The creation of Defendant Equitas and its assumption in 2009 of 100% of the rights, obligations, and liabilities of Lloyd's Names on 1992 and prior years business was the culmination of a series of steps that were taken to address concerns about the solvency and liquidity of the Lloyd's market and to provide finality to Names for business assigned to the 1992 and prior years of account.

43.    Ultimately, Equitas assumed 100% of the rights, obligations, and liabilities of Lloyd's Names for 1992 and prior years pursuant to a "Part VII Transfer"—a statutory procedure under the United Kingdom's Financial Services and Markets Act of 2000 that permits the novation of insurance and reinsurance contracts from their original issuer to a successor entity. The Part VII Transfer proceeded in two stages.  First, pursuant to a document referred to as the "Scheme," the Names agreed to transfer, and Equitas agreed to accept, all of the Names' rights, obligations, and liabilities arising from 1992 and prior years' non-life insurance and reinsurance

policies.  Second, once the economic terms of the Scheme were agreed between the Names and Equitas, those terms were approved by the High Court in London.  The High Court approved the transfer of the Names' business to Equitas on June 30, 2009.

44.     In connection with Equitas's assumption of the Lloyd's Names' business, National Indemnity Company (a Berkshire Hathaway company) ("NICO") reinsured the Lloyd's business assumed by Equitas.  NICO has contractual claims handling responsibilities with respect to the liabilities of Lloyd's Names for business assigned to the 1992 and prior years of account.

45.     NICO's affiliate, RMSL, managed U.S. Fire's and North River's billings submitted under the Reinsurance Contracts on behalf of Equitas.  RMSL's management on behalf of Equitas included the acceptance, handling, and determination of whether to issue payment of U.S. Fire's and North River's billings.

46.     RMSL also managed U.S. Fire's and North River's billings submitted under the Reinsurance Contracts on behalf of the London Market Companies.  RMSL's management on behalf of the London Market Companies included the acceptance, handling, and determination of whether to issue payment of outstanding billings.

### E.     The Resolute-Managed Reinsurers' Audits, the Reinsurance Billings, and the Resolute-Managed Reinsurers' Payments and Reservations of Rights

47.     In early 2015, RMSL, on behalf of the Resolute-Managed Reinsurers, conducted a two-day audit of Mine Safety files related to the Reinsurance Contracts at RiverStone's office in Manchester, New Hampshire (the "2015 Audit").  The purpose of the 2015 Audit, as conveyed to RiverStone's Collections and Dispute Manager, was for the Resolute-Managed Reinsurers to, among other things, "get a better sense of where the claim is currently."

48.     In March 2017, RiverStone billed Equitas $18,471,078 under the Reinsurance Contracts for its share of U.S. Fire's and North River's 2017 payment under the Mine Safety Policies.

49.     In March 2017, RiverStone billed the London Market Companies $3,313,181 under the Reinsurance Contracts for their share of U.S. Fire's and North River's 2017 payment under the Mine Safety Policies.

50.     On May 19, 2017, RMSL's Vice President of Assumed Claims wrote the following to RiverStone's Vice President and Head of the Reinsurance Department in New Hampshire:

> I am pleased to say we have authority to make payment of $18,343,530.08 on behalf of Underwriters in response to Riverstone's [sic] March 28, 2017 reinsurance proof of loss. Whilst we have some questions/concerns regarding the presentation [sic] we are prepared to make this payment under a full reservation of rights per the attached schedule.

51.     RMSL's Vice President of Assumed Claims also asked to conduct a second claim audit in RiverStone's Manchester, New Hampshire office.

52.     In May 2017, Equitas wired $18,343,530.08 to RiverStone for the U.S. Fire and North River billings.

53.     In June 2017, the London Market Companies wired $1,121,006 to RiverStone for the U.S. Fire and North River billings.

54.     In late June 2017, RMSL, on behalf of the Resolute-Managed Reinsurers, conducted a second audit of Mine Safety files related to the Reinsurance Contracts at RiverStone's office in Manchester, New Hampshire (the "2017 Audit").

55.     RMSL's Vice President of Assumed Claims was among the individuals conducting the 2017 Audit.

11

56.     On June 30, 2017, RMSL's Vice President of Assumed Claims wrote the following to RiverStone's Collections and Dispute Manager and Vice President and Head of the Reinsurance Department in New Hampshire:

> On the subject of payment [sic] I am pleased to say that we are now in a position to make payment on behalf of Yasuda subject to your agreement to repay the amounts transferred should we subsequently be able to identify a commutation agreement that would cover these MSA reinsurance contracts.

57.     RMSL's Vice President of Assumed Claims further wrote: "On the matter of the Stonewall payment [sic] I have managed to confirm that a check had in fact not been issued and I have asked them to arrange for the amount due to be wire-transferred to you instead."

58.     In July 2017, the London Market Companies wired $1,042,972.21 to RiverStone for the U.S. Fire and North River billings.

59.     In July 2017, the London Market Companies paid $970,329.59 to RiverStone for the U.S. Fire and North River billings by check.

60.     On September 20, 2017, RSML's Vice President of Assumed Claims wrote that: "as a gesture of good faith and subject to a reservation of rights, we will make payment of the remaining $154,281 of the indemnity billing …."

61.     In October, 2017, RiverStone received that payment via wire.

62.     In November 2017, RiverStone billed Equitas $174,487.88 for its share of additional payments made by U.S. Fire and North River to Mine Safety.

63.     In November 2017, RiverStone billed the London Market Companies $22,431.22 for their share of additional payments made by U.S. Fire and North River to Mine Safety.

64.     In September 2018, RiverStone billed the London Market Companies an additional $614,134.42 for their share of additional payments made by U.S. Fire and North River under the Mine Safety Policies.

65.     On October 16, 2018, RMSL's Vice President of Assumed Claims wrote the

following to RiverStone's Vice President and Head of the Reinsurance Department in New

Hampshire: "I write on behalf of the Resolute UK-Managed Companies," noting:

> The Resolute UK-Managed Companies are:- [sic] Tenecom
> Limited f/k/a Yasuda Fire & Marine Insurance Company (UK)
> Limited, Tenecom Limited as the successor under United Kingdom
> law to Winterthur Swiss Insurance Company, Sompo Holdings,
> Inc. f/k/a Sompo Japan Insurance, Inc. f/k/a Nissan Fire & Marine
> Insurance Company, and Stonewall Insurance Company n/k/a
> Berkshire Hathaway Specialty Insurance Company.

66.     RMSL's Vice President of Assumed Claims further wrote:  "Consequently,

subject to a full reservation of rights, we [sic] arranging payment to North River of $611,347 in

full and final settlement of the MSA claims . . . . We are aiming to make payment as one amount

by wire transfer on Friday [sic] October 19th."

67.     In October 2018, the London Market Companies wired $611,347 to RiverStone

for the U.S. Fire and North River billings.

68.     RiverStone responded that payment would be received under a full reservation of

rights, including the right to recover additional amounts in any future proceeding.

**F.     Equitas's Refusal to Pay Additional Reinsurance Billings**

69.     In September 2018, RiverStone billed Equitas an additional $20,443,886.84 for its

share of additional payments made by U.S. Fire and North River under the Mine Safety Policies.

70.     Equitas refuses to pay that additional billing.

<u>**COUNT I – BREACH OF CONTRACT AGAINST EQUITAS**</u>
**(U.S. Fire Reinsurance Contract UL1983000)**

71.     U.S. Fire re-alleges each and every allegation set forth in paragraphs 1 through

70, as if fully set forth herein.

72.     Reinsurance Contract UL1983000 is a valid and enforceable contract.

73.     U.S. Fire has paid all premiums due, and any of U.S. Fire's other obligations and conditions under Reinsurance Contract UL1983000 have been satisfied or waived.

74.     U.S. Fire has paid amounts under Policy JU 158 that are covered under Reinsurance Contract UL1983000.

75.     U.S. Fire has presented claims for reinsurance coverage under Reinsurance Contract UL1983000 to Equitas.

76.     In breach of Reinsurance Contract UL1983000, Equitas failed to pay U.S. Fire's outstanding billing for its share of amounts paid by U.S. Fire under Policy JU 158.

77.     U.S. Fire has been damaged by Equitas's breach of Reinsurance Contract UL1983000 in the amount of at least $13,538,533.43, plus interest.

**WHEREFORE**, U.S. Fire respectfully requests that the Court enter judgment in U.S. Fire's favor and against Equitas as follows:

(a)     Finding that Equitas breached Reinsurance Contract UL1983000;

(b)     Awarding U.S. Fire compensatory damages in the amount of at least $13,538,533.43, plus statutory pre-judgment interest;

(c)     Awarding U.S. Fire the reasonable costs and fees incurred in bringing this action; and

(d)     Awarding U.S. Fire such other relief as the Court deems just and proper.

## COUNT II – BREACH OF CONTRACT AGAINST EQUITAS
### (U.S. Fire Reinsurance Contract UG3191100)

78.     U.S. Fire re-alleges each and every allegation set forth in paragraphs 1 through 70, as if fully set forth herein.

79.     Reinsurance Contract UG3191100 is a valid and enforceable contract.

80.     U.S. Fire has paid all premiums due, and any of U.S. Fire's other obligations and conditions under Reinsurance Contract UG3191100 have been satisfied or waived.

81.     U.S. Fire has paid amounts under Policy XS 2526 that are covered under Reinsurance Contract UG3191100.

82.     U.S. Fire has presented claims for reinsurance coverage under Reinsurance Contract UG3191100 to Equitas.

83.     In breach of Reinsurance Contract UG3191100, Equitas failed to pay U.S. Fire's outstanding billing for its share of amounts paid by U.S. Fire under Policy XS 2526.

84.     U.S. Fire has been damaged by Equitas's breach of Reinsurance Contract UG3191100 in the amount of at least $4,380,896.08, plus interest.

**WHEREFORE**, U.S. Fire respectfully requests that the Court enter judgment in U.S. Fire's favor and against Equitas as follows:

(a)     Finding that Equitas breached Reinsurance Contract UG3191100;

(b)     Awarding U.S. Fire compensatory damages in the amount of at least $4,380,896.08, plus statutory pre-judgment interest;

(c)     Awarding U.S. Fire the reasonable costs and fees incurred in bringing this action; and

(d)     Awarding U.S. Fire such other relief as the Court deems just and proper.

## COUNT III – BREACH OF CONTRACT AGAINST EQUITAS
### (U.S. Fire Reinsurance Contract UL2016300)

85.     U.S. Fire re-alleges each and every allegation set forth in paragraphs 1 through 70, as if fully set forth herein.

86.     Reinsurance Contract UL2016300 is a valid and enforceable contract.

87.     U.S. Fire has paid all premiums due, and any of U.S. Fire's other obligations and conditions under Reinsurance Contract UL2016300 have been satisfied or waived.

88.     U.S. Fire has paid amounts under Policy JU 171 that are covered under Reinsurance Contract UL2016300.

89.     U.S. Fire has presented claims for reinsurance coverage under Reinsurance Contract UL2016300 to Equitas.

90.     In breach of Reinsurance Contract UL2016300, Equitas failed to pay U.S. Fire's outstanding billing for its share of amounts paid by U.S. Fire under Policy JU 171.

91.     U.S. Fire has been damaged by Equitas's breach of Reinsurance Contract UL2016300 in the amount of at least $2,180,821.28, plus interest.

**WHEREFORE**, U.S. Fire respectfully requests that the Court enter judgment in U.S. Fire's favor and against Equitas as follows:

(a)     Finding that Equitas breached Reinsurance Contract UL2016300;

(b)     Awarding U.S. Fire compensatory damages in the amount of at least $2,180,821.28, plus statutory pre-judgment interest;

(c)     Awarding U.S. Fire the reasonable costs and fees incurred in bringing this action; and

(d)     Awarding U.S. Fire such other relief as the Court deems just and proper.

### COUNT IV – BREACH OF CONTRACT AGAINST EQUITAS
#### (U.S. Fire Reinsurance Contract UH3264700)

92.     U.S. Fire re-alleges each and every allegation set forth in paragraphs 1 through 70, as if fully set forth herein.

93.     Reinsurance Contract UH3264700 is a valid and enforceable contract.

94.     U.S. Fire has paid all premiums due, and any of U.S. Fire's other obligations and conditions under Reinsurance Contract UH3264700 have been satisfied or waived.

95.     U.S. Fire has paid amounts under Policy JU 10 that are covered under Reinsurance Contract UH3264700.

96.     U.S. Fire has presented claims for reinsurance coverage under Reinsurance Contract UH3264700 to Equitas.

97.     In breach of Reinsurance Contract UH3264700, Equitas failed to pay U.S. Fire's outstanding billing for its share of amounts paid by U.S. Fire under Policy JU 10.

98.     U.S. Fire has been damaged by Equitas's breach of Reinsurance Contract UH3264700 in the amount of at least $137,539.34, plus interest.

**WHEREFORE**, U.S. Fire respectfully requests that the Court enter judgment in U.S. Fire's favor and against Equitas as follows:

(a)     Finding that Equitas breached Reinsurance Contract UH3264700;

(b)     Awarding U.S. Fire compensatory damages in the amount of at least $137,539.34, plus statutory pre-judgment interest;

(c)     Awarding U.S. Fire the reasonable costs and fees incurred in bringing this action; and

(d)     Awarding U.S. Fire such other relief as the Court deems just and proper.

### COUNT V – BREACH OF CONTRACT AGAINST EQUITAS
### (North River Reinsurance Contract UL1982900)

99.     North River re-alleges each and every allegation set forth in paragraphs 1 through 70, as if fully set forth herein.

100.     Reinsurance Contract UL1982900 is a valid and enforceable contract.

101.    North River has paid all premiums due, and any of North River's other obligations and conditions under Reinsurance Contract UL1982900 have been satisfied or waived.

102.    North River has paid amounts under Policy JU 157 that are covered under Reinsurance Contract UL1982900.

103.    North River has presented claims for reinsurance coverage under Reinsurance Contract UL1982900 to Equitas.

104.    In breach of Reinsurance Contract UL1982900, Equitas failed to pay North River's outstanding billing for its share of amounts paid by North River under Policy JU 157.

105.    North River has been damaged by Equitas's breach of Reinsurance Contract UL1982900 in the amount of at least $108,754.46, plus interest.

**WHEREFORE**, North River respectfully requests that the Court enter judgment in North River's favor and against Equitas as follows:

(a)     Finding that Equitas breached Reinsurance Contract UL1982900;

(b)     Awarding North River compensatory damages in the amount of at least $108,754.46, plus statutory pre-judgment interest;

(c)     Awarding North River the reasonable costs and fees incurred in bringing this action; and

(d)     Awarding North River such other relief as the Court deems just and proper.

### <u>COUNT VI – BREACH OF CONTRACT AGAINST EQUITAS</u>
#### (North River Reinsurance Contract UL1929000)

106.    North River re-alleges each and every allegation set forth in paragraphs 1 through 70, as if fully set forth herein.

107.    Reinsurance Contract UL1929000 is a valid and enforceable contract.

108.     North River has paid all premiums due, and any of North River's other obligations and conditions under Reinsurance Contract UL1929000 have been satisfied or waived.

109.     North River has paid amounts under Policy JU 139 that are covered under Reinsurance Contract UL1929000.

110.     North River has presented claims for reinsurance coverage under Reinsurance Contract UL1929000 to Equitas.

111.     In breach of Reinsurance Contract UL1929000, Equitas failed to pay North River's outstanding billing for its share of amounts paid by North River under Policy JU 139.

112.     North River has been damaged by Equitas's breach of Reinsurance Contract UL1929000 in the amount of at least $61,353.56, plus interest.

**WHEREFORE**, North River respectfully requests that the Court enter judgment in North River's favor and against Equitas as follows:

(a)     Finding that Equitas breached Reinsurance Contract UL1929000;

(b)     Awarding North River compensatory damages in the amount of at least $61,353.56, plus statutory pre-judgment interest;

(c)     Awarding North River the reasonable costs and fees incurred in bringing this action; and

(d)     Awarding North River such other relief as the Court deems just and proper.

### COUNT VII – BREACH OF CONTRACT AGAINST EQUITAS
#### (North River Reinsurance Contract US2767800)

113.     North River re-alleges each and every allegation set forth in paragraphs 1 through 70, as if fully set forth herein.

114.     Reinsurance Contract US2767800 is a valid and enforceable contract.

115.     North River has paid all premiums due, and any of North River's other obligations and conditions under Reinsurance Contract US2767800 have been satisfied or waived.

116.     North River has paid amounts under Policy JU 1123 that are covered under Reinsurance Contract US2767800.

117.     North River has presented claims for reinsurance coverage under Reinsurance Contract US2767800 to Equitas.

118.     In breach of Reinsurance Contract US2767800, Equitas failed to pay North River's outstanding billing for its share of amounts paid by North River under Policy JU 1123.

119.     North River has been damaged by Equitas's breach of Reinsurance Contract US2767800 in the amount of at least $13,931.48, plus interest.

**WHEREFORE**, North River respectfully requests that the Court enter judgment in North River's favor and against Equitas as follows:

(a)     Finding that Equitas breached Reinsurance Contract US2767800;

(b)     Awarding North River compensatory damages in the amount of at least $13,931.48, plus statutory pre-judgment interest;

(c)     Awarding North River the reasonable costs and fees incurred in bringing this action; and

(d)     Awarding North River such other relief as the Court deems just and proper.

## COUNT VIII – BREACH OF CONTRACT AGAINST EQUITAS
### (North River Reinsurance Contract UR2767800)

120.     North River re-alleges each and every allegation set forth in paragraphs 1 through 70, as if fully set forth herein.

121.     Reinsurance Contract UR2767800 is a valid and enforceable contract.

122.    North River has paid all premiums due, and any of North River's other obligations and conditions under Reinsurance Contract UR2767800 have been satisfied or waived.

123.    North River has paid amounts under Policy JU 988 that are covered under Reinsurance Contract UR2767800.

124.    North River has presented claims for reinsurance coverage under Reinsurance Contract UR2767800 to Equitas.

125.    In breach of Reinsurance Contract UR2767800, Equitas failed to pay North River's outstanding billing for its share of amounts paid by North River under Policy JU 988.

126.    North River has been damaged by Equitas's breach of Reinsurance Contract UR2767800 in the amount of at least $12,431.55, plus interest.

**WHEREFORE**, North River respectfully requests that the Court enter judgment in North River's favor and against Equitas as follows:

(a)    Finding that Equitas breached Reinsurance Contract UR2767800;

(b)    Awarding North River compensatory damages in the amount of at least $12,431.55, plus statutory pre-judgment interest;

(c)    Awarding North River the reasonable costs and fees incurred in bringing this action; and

(d)    Awarding North River such other relief as the Court deems just and proper.

### COUNT IX – BREACH OF CONTRACT AGAINST EQUITAS
#### (North River Reinsurance Contract UQ2767800)

127.    North River re-alleges each and every allegation set forth in paragraphs 1 through 70, as if fully set forth herein.

128.    Reinsurance Contract UQ2767800 is a valid and enforceable contract.

129.    North River has paid all premiums due, and any of North River's other obligations and conditions under Reinsurance Contract UQ2767800 have been satisfied or waived.

130.    North River has paid amounts under Policy JU0830 that are covered under Reinsurance Contract UQ2767800.

131.    North River has presented claims for reinsurance coverage under Reinsurance Contract UQ2767800 to Equitas.

132.    In breach of Reinsurance Contract UQ2767800, Equitas failed to pay North River's outstanding billing for its share of amounts paid by North River under Policy JU 830.

133.    North River has been damaged by Equitas's breach of Reinsurance Contract UQ2767800 in the amount of at least $9,625.66, plus interest.

**WHEREFORE**, North River respectfully requests that the Court enter judgment in North River's favor and against Equitas as follows:

(a)    Finding that Equitas breached Reinsurance Contract UQ2767800;

(b)    Awarding North River compensatory damages in the amount of at least $9,625.66, plus statutory pre-judgment interest;

(c)    Awarding North River the reasonable costs and fees incurred in bringing this action; and

(d)    Awarding North River such other relief as the Court deems just and proper.

### COUNT X – DECLARATORY JUDGMENT AGAINST THE RESOLUTE-MANAGED REINSURERS

134.    U.S. Fire and North River re-allege each and every allegation set forth in paragraphs 1 through 133, as if fully set forth herein.

135.    An actual controversy exists between U.S. Fire and North River, on the one hand, and the Resolute-Managed Reinsurers, on the other hand, as to the parties' rights, duties, and obligations under the Reinsurance Contracts, including, but not limited to, the Resolute-Managed Reinsurers' obligation to pay to U.S. Fire and North River, without reservation, the Resolute-Managed Reinsurers' respective shares of payments made by U.S. Fire and North River to Mine Safety under the Mine Safety Policies reinsured under the Reinsurance Contracts.

136.    U.S. Fire and North River are entitled to a declaration of their rights with respect to the Resolute-Managed Reinsurers' obligations to pay to U.S. Fire and North River, without reservation, the Resolute-Managed Reinsurers' respective shares of payments made by U.S. Fire and North River to Mine Safety under the Mine Safety Policies reinsured under the Reinsurance Contracts.

**WHEREFORE**, U.S. Fire and North River respectfully request that the Court enter judgment in U.S. Fire's and North River's favor and against Equitas and the London Market Companies as follows:

(a)    Declaring that the Resolute-Managed Reinsurers are obligated to pay to U.S. Fire and North River, without reservation, the Resolute-Managed Reinsurers' respective shares of payments made by U.S. Fire and North River to Mine Safety under the Mine Safety Policies reinsured under the Reinsurance Contracts;

(b)    Awarding U.S. Fire and North River the reasonable costs and fees incurred in bringing this action; and

(c)    Awarding U.S. Fire and North River such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.


Dated:  December 21, 2018

<div style="margin-left:40%">

**UNITED STATES FIRE INSURANCE
COMPANY AND NORTH RIVER INSURANCE
COMPANY**


/s/ *Kevin M. Fitzgerald*
Kevin M. Fitzgerald (Bar No. 806)
NIXON PEABODY LLP
900 Elm Street, 14th Floor
Manchester, New Hampshire 03101
(603) 628-4000
kfitzgerald@nixonpeabody.com

and

Catherine E. Isely (*pro hac to be submitted*)
Andrew D. Shapiro (*pro hac to be submitted*)
BUTLER RUBIN SALTARELLI & BOYD LLP
321 N. Clark Street, Suite 400
Chicago, Illinois 60654
(312) 444-9660
cisely@butlerrubin.com
ashapiro@butlerrubin.com

</div>

556882

24